## ALECK ROGERS v. THE STATE.

1. RAPE—EVIDENCE.—In prosecutions for rape, or for assault with intent to commit rape, it is competent for the accused to impeach the character of

the prosecutrix for chastity by proof of her general reputation in that respect—not to justify or excuse the offense, but to raise a presumption that she yielded her consent, and was not in fact forced.

**2. SAME.**—To raise a presumption of consent, acts of illicit intercourse by the prosecutrix with the accused are competent evidence; but acts of illicit intercourse by the prosecutrix with others than the accused are not competent.

**3. SAME.**—For the purpose of discrediting the prosecutrix in a rape case it is competent to prove that she failed to make outcry, or call for obtainable aid, or failed to disclose the offense within a reasonable time.

**4. CHARGE OF THE COURT.**—It is well settled that charges to juries need only comprise the law applicable to all deductions which can be legitimately drawn from the facts proved.

APPEAL from the Criminal Court of the city of Bonham. Tried below before the Hon. JAMES Q. CHENOWITH.

The facts of this revolting case are sufficiently stated in the opinion of the court. Both the accused and the prosecutrix were negroes.

No brief for the appellant.

*A. J. Peeler*, Assistant Attorney General, for the State.

ECTOR, Presiding Judge. The defendant, Aleck Rogers, was indicted in the criminal court of the city of Bonham, county of Fannin, on the 14th day of July, 1875, for "rape," charged to have been committed upon the person of Emily Dodd. The jury found the defendant guilty, and assessed his punishment at death. The defendant filed a motion for new trial, which was overruled, and he then, in open court, gave notice of an appeal to the supreme court. The case has been transferred from the supreme court to the court of appeals.

The defendant has filed the following assignment of errors :

" 1st. That the court erred for failing to instruct the jury that they had the right, in their discretion, to substi-

tute imprisonment at hard labor for life for capital pun-ishment.

" 2d. That the court erred in failing to charge the jury that the character of the prosecutrix might be impeached for previous lewd and immoral intercourse with the prisoner.

" 3d. The court erred in failing to charge the jury that the failure to make outcry, or call for aid when it might have been readily obtained, or within reasonable time to discover the offense, after an opportunity to do so, are circumstances to discredit the testimony of the prosecutrix.  ·

" 4th. The court erred in failing to charge the jury that,. on the trial of an indictment for rape, the jury might, if the evidence warranted it, find the defendant guilty of the lesser degree of that offense.

" 5th. The court erred in giving the jury the charge· No. 7, which charges upon the weight of the evidence, is misleading in its language, and tended to confuse and mislead the jury in their determination of the issues of the case."

The 1st error assigned is not well taken.   The 4th instruc-tion given to the jury is as follows :

" If you believe from the evidence that the defendant did,. at any time within the year immediately preceding the time. of the presentment of this indictment—to wit, the 14th day of July, 1875—in the manner alleged in the bill of indict-ment, make an assault upon the person of the said Emily Dodd, and that the said Emily Dodd was a woman, and. that defendant did, by force, threats, and fraud, violently and against her, the said Emily's, will, ravish and carnally know her, the said Emily Dodd, in the manner as charged in the indictment and defined in the 1st clause of this. charge, you will find him guilty and fix his punishment by death, or, in your discretion, by confinement in the state· penitentiary for life, or for any term of years not less than five."

It will be at once seen that the latter portion of the above-

instruction does leave it discretionary with the jury as to the punishment to be assessed by them in case they find the defendant guilty, leaving it discretionary to assess his punishment at death or by confinement in the penitentiary.

The court below permitted all the evidence offered by the defendant to impeach the character of the state's witness, the said Emily Dodd, for chastity, to go to the jury. In prosecutions of this kind the proof of the offense depends very frequently upon the testimony of the party charged to have been outraged, and, in most cases, to a very great extent upon her truth and credibility; and, beyond question, every reasonable test should be applied to her integrity, for the safety of the accused. In prosecutions for rape, or for an assault with intent to rape, the character of the prosecutrix (or of the principal state's witness) for chastity may be impeached by proving her general reputation for chastity— not as evidence of justification or excuse for the offense, but for the purpose of raising the presumption that she yielded her assent, and was not in fact forced. For the same purpose the defendant is allowed to prove, if he can, any acts of illicit connection between her and the defendant, but not particular acts with other parties.

Judge Lumpkin, in a very able opinion, uses the following language: "I may safely assert that this authority is founded on the clearest reason. The female asserts in her testimony that the attempt was *forcibly* made and *without her consent*. Now, who is more likely to consent to the approaches of a man—the unsullied virgin and the revered, loved, and virtuous mother of a family, or the lewd and loose prostitute, whose arms are open to the embraces of every coarse brute who has money enough to pay for the privilege? The fact of assent may in reason be well left to the jury, upon proof of ill or evil fame." 3 Kelly (Ga.), 421.

As all the testimony offered by the defendant in regard to the character of said Emily Dodd for chastity was

admitted, and his counsel were allowed to ask questions which, had they been objected to, were not admissible, we can see no reason for the defendant to complain of the action of the court, or its charge, on this account.

The above, we think, is a sufficient answer to the 2d assignment of errors; and what we have said in regard to this is also applicable to his 3d assignment of errors. There is no question but that a failure to make outcry, or to call for aid when it might have been readily obtained, or a failure to discover the offense within a reasonable time after an opportunity to do so, would be circumstances proper to go to a jury to discredit the testimony of the witness for the state, upon whom the outrage is charged to have been committed.

In the case now before the court the said Emily Dodd states in her testimony that, when the outrage was first attempted upon her by the defendant, she hallooed several times as fast as she could; that defendant then covered her mouth with one of his hands; that with his weight upon her she soon found her breath failing; that she was frightened, and, besides, they were in a dense forest, where no aid could have been readily obtained. She states that she resisted the defendant with all the means in her power, and that he finally accomplished his purpose. If her testimony is true, her conduct was that of a woman jealous of her chastity, shuddering at the thought of dishonor, and trying to avoid pollution. If it is true, the act was committed upon her by force and violence, without her consent, and over her utmost resistance. She states that she is the mother of thirteen children, and the mother-in-law of the defendant; that she and defendant lived some four miles apart; that defendant came to her home and asked her to accompany him home, stating that he had to leave home the next day on some business, and he wanted her to go to his house and return with his wife to her house; that his wife was in the

family way and was threatened with miscarriage. She says that she had been washing hard that day, and told him she was tired and did not feel able to go, but finally, on account of her daughter, consented to go with him; that they left for the house of defendant on foot, about dusk; that, after they had gone a considerable portion of the way, they took a path leading off from the wagon-road, which defendant said was a nearer way, and soon their way became so obstructed with brush and briars that they could hardly get through them; that it had become dark by this time; that, after going some distance through the brush without any road or path, he spoke to her about wild animals in the bottom, when she became alarmed; he stopped, and said that they could not find their way out and would have to wait until the moon rose; that she did not know where they were, but insisted they should go on and get out of there; they finally sat down by a tree, and at that place that defendant committed the rape upon her, giving the particulars of the outrage; that she told one of her daughters (not the wife of the defendant) about it that night, and as soon as she got home the next morning she told her husband, and took steps the same day to have the defendant arrested. One cannot read the testimony in the record without being impressed with the truth of her story.

The presiding judge gave the jury an able and well-prepared charge, in which he submitted to them clearly the law as applicable to the facts in the case, and the counsel for the defendant asked no additional instructions.

As to the 4th assignment, we deem it only necessary to say that there was no evidence before the jury that would have warranted the court to have given a charge on the lesser degrees of which a defendant may be found guilty (when the facts would authorize it) on a trial for rape. It has been often held by the supreme court of this state that it is only necessary to give such instructions as are appli-

cable to every legitimate deduction which the jury may draw from the facts in evidence.

The 7th instruction given by the court, which the defendant assigns as error, is as follows : " You may consider the question of the character of the prosecuting witness, Emily Dodd—not as evidence of justification or excuse for the offense, but for the purpose of raising the presumption that she yielded her assent, and was not in fact forced. This presumption will be stronger or weaker according to the degree of prostitution established by the evidence. But if you believe that the general character of the said prosecuting witness, Emily Dodd, for chastity and virtue has been sustained by the evidence, then, if you believe from the evidence that the assault was made as charged, the presumption that she yielded her assent will be destroyed, and you will make your verdict in accordance with all the facts of the case as adduced in evidence." This instruction, taken with the preceding and subsequent portions of the charge, presented fairly the law of the case. The charge concludes thus : " All persons are presumed to be innocent until their guilt is established by legal evidence ; and if you have any reasonable doubt as to the guilt of the defendant you will find him not guilty."

We have carefully examined the entire record in this case to see if there is anything in it that would authorize us to reverse the judgment. We are fully sensible of the fact that we cannot be too cautious in cases of this kind, wherein the court and jury trying the case may be easily imposed upon without great care and vigilance on their part—the heinousness of the offense many times transporting the judge and jury with so much indignation that they are over-hastily carried to the conviction of the person accused thereof by the testimony of false and malicious witnesses. No words were ever more truthfully uttered by a judge than those of that great and good man, Lord Hale, when he said : " It

13

must be remembered that rape is an accusation easily to be made, hard to be proved, and harder to be defended by the party accused, though never so innocent." The law makes the party ravished a competent witness, but the credibility of her testimony, and how far she is to be believed,, must be left to the jury, and is more or less credible according to the circumstances of fact that occur in that testimony.

In this case the jury were doubtless satisfied from the evidence that Emily Dodd is of good fame; that she made outcry when her person was violated; that she presently discovered the offense to some credible person, and that her story was true. So far as the evidence shows, the best of feelings existed, up to that unfortunate night, between her and her son-in-law, the defendant, and we can perceive no motive which would cause her falsely to accuse the defendant. Whilst we believe no words were ever more pregnant with judicial wisdom than those pronounced by Lord Hale, which we have given, and are feelingly sensible of the responsibility resting upon us, we are constrained to say that the honest convictions of our minds, after a patient and careful examination of .the record, leave us no alternative, and that we cannot do otherwise than affirm the judgment of the court below.

*Judgment affirmed.*